12-110 and 23-14118, United States v. James, et al. We've got a cast of thousands arguing this morning. Mr. Schwartz, Ms. Lowenthal, Mr. Horowitz for the Appellants, and Ms. Cohen for the Appellees. You may proceed when ready. Good morning, Your Honors. May it please the Court. Ken Schwartz on behalf of Antonio James, Jr. I will be addressing three issues this morning. The Search Warrant, the Bruton Issue, and the 924C Issue. The flaw in the Search Warrant is that nothing in the Search Warrant says how James used his iPhone in a way that caused evidence of the offense to be stored on the iCloud. The Search Warrant has in it a long description of information stored in the iCloud, but the only factual examples that were given of the use of the phone leading to evidence of a crime were examples of facts from a different crime, a sex offense. This is not a case where good faith salvages the Search Warrant. The magistrate completely failed to read through the Search Warrant to make the independent assessment that there was probable cause between the use of the phone, the crime, and the iCloud. This was key to the probable cause. And do you say the reason that you say the magistrate failed to read through the affidavit is because of the Hamilton reference? Is that sort of correct? Correct. Two paragraphs. But not in the probable cause section, right? It is not underlabeled probable cause. It was labeled that description of information stored in the iCloud. But that is what linked the probable cause, or at least the facts of this case, to the iCloud, just as important as the probable cause section that was labeled probable cause. But wasn't there paragraphs above that said described above, and the described above points are the ones that deal with the probable cause? Not in that section specifically regarding the description of information in the iCloud, as I recall. No reference to what was above. Simply describing, that section simply described what was in the iCloud and what could be found. And why was that important? Because that's where the agent who apparently wrote it for the Hoffman case wanted to link the crime to the iCloud. That's where the agent should have put in facts from this case linking to the iCloud. Wasn't done. In fact, showed they didn't even bother looking at what they cut and pasted into the search warrant, nor did the magistrate. Why didn't the magistrate at least read through it? We know the magistrate didn't read through it because the magistrate, if the magistrate had done her job, would have caught that. It wasn't caught. This was crucial to the case because there is, they called Mr. James the historian. The substantial amount of evidence in this case come from the iCloud. Without the iCloud, they were left with a DNA match on a piece of plastic that was found. A day later, many intervening events could have happened that have caused a piece of DNA to be on a piece of evidence. Two pieces of DNA on something that was abandoned and that had been found a day later. Without that evidence, there was definitely not an overwhelming case. Without that evidence, there was credible argument that there was reasonable doubt that Mr. James was one of the individuals in that house. Identification was key in this case. The government had to identify because the victims didn't know who they were. They couldn't identify them. It had to be done through other evidence, the indirect evidence. And without the iCloud, that evidence was lacking. I understand your point about the use of the evidence at trial, but going back to the warrant itself, do you disagree that the affidavit did link James' cell phone to the kidnapping scene? Yes, but I'm sorry, I don't mean to cut you off. Go ahead with your but. The use of the phone by itself doesn't mean that there's going to be evidence in the iCloud, and that's what was missing in this affidavit. Didn't the victim say that the phone was used during the crime? Yes. That they saw Mr. James use his phone various times throughout the kidnapping? They actually didn't see Mr. James use it. They saw Mr. Campbell using the phone. He's the individual that took the victims to the various places, and that victim saw him using the phone, and the agent surmised that he was communicating with the other two, meaning Mr. James. So they didn't actually see my client using his phone. They saw the other client using his phone, and they were trying to link. But the use of the phone by itself doesn't mean that there's going to be iCloud evidence, evidence in the iCloud. You have to have more than just using your phone, because that evidence can be picked up through cell phone records. That is not what's in the iCloud. The iCloud is the information that's stored through the backup in the iCloud. Okay. Very well. Thank you very much. You've got a minute rebuttal time remaining to you. Okay. Thank you. All right, Ms. Lowenthal, four minutes. Good morning. May it please the Court, Cheryl Lowenthal for the appellant Kiwan Campbell. I wanted to discuss the bank robbery issue. It's an issue of first impression before this Court. There is a definite circuit conflict on the issue. The Fifth Circuit rules in our favor. The Seventh and Tenth Circuits have ruled against us, our position. And when one of those cases went up to the U.S. Supreme Court on conflict cert, the Court just didn't take the case. I guess they weren't ready to take it yet for whatever reason. But we do have a viable circuit conflict. So with that said, we submit that the government charged the wrong charge, and the convictions were based upon the wrong offense. The facts do not show a bank robbery under Section 2113. Is your point that this should have been Hobbs Act robbery, not bank robbery? Could it have been Hobbs Act robbery? Maybe, yes. And it could have been strong-arm robbery, and it could have been – there are a number of choices, I suppose, available to the prosecutors. Let me ask you this. Could it even have been bank robbery if the theory of bank robbery were not force, violence, or intimidation, but instead extortion? Because the statute says whoever, by force and violence or by intimidation, takes or attempts to take from the person present to another or attempts to obtain by extortion any property belonging to the bank. If they had ridden the extortion horse, would this have been a problem? I think not. I don't think it would have supported a conviction for bank robbery under the elements required by statute. And I would submit additionally that this ATM – this was an ATM. He had the account holder's ATM – well, it was not an ATM card. It was a – Debit card? Yes, debit card. Thank you. And he had the code numbers given to him by the account holder, and I think that Mr. Horowitz is going to explain why this was not – they were not bank monies that were commingled. This was her money from her account, and she handed it back to him. What does that have to do with anything? Isn't the money being held by the bank? Once it's deposited, does it not belong to the bank until you withdraw it? But it was withdrawn. Those were her funds. Surely it was within the care, custody, control, and management of the bank. Well, not once it was taken from the ATM. She didn't take it from the ATM. He's the one that withdrew it. He took her debit card, and he took her PIN, and he used it. I mean, you're not suggesting that he had authorization, do you? Well, the record is the record. I can't argue with – you know, I can't tell you what's not in the record. I'm kind of curious about one of the arguments you made, that the bank was closed. Are you still relying on that, or is that just – Yes, still relying on that. They got there. The bank was closed. It was Monday. Nobody knew why. And then they realized it was Columbus Day. It's a federal holiday. The bank was closed. So are you suggesting that if the bank is closed on Columbus Day, and you break into the actual bank that's closed, and you go into the vault, and you steal money from the vault, are you suggesting that it's not a bank robbery because the bank is closed? That it's not a bank robbery. Someone has to be placed in fear, but there was no one in the bank. There were no tellers, no officers, not a security guard, not a janitor. Nobody was in the bank. The bank was closed. So I think you're obviously right in your answer to Judge Lagoa's question that if you break into an empty bank and steal money, that's not bank robbery because there is no another. It has to be taken from the person or presence of another. Correct. But here there wasn't another, and it was Mrs. Harris. But it was outside the bank, and it was the funds were her funds. They weren't co-bingled with bank funds, and that is our position that we're relying on, and I believe that my. Okay. Very well. Thank you so much. Mr. Horowitz, you're up. You're down, but you're up. You are welcome to sit at council table with your bum foot. Thank you, Judge. A little bit of both, up and down. There you go. Thank you, Your Honor. I just wanted to answer a question that the court posed to start with about could it have been extortion? Maybe if the grand jury had found extortion. If the court looks, it counts four, six, and eight, which are the bank robbery counts. It is not alleged to have been an extortion. It tracks the bank robbery statute and not the extortion statute. Can I ask you this? So I think you're right about this, that the government did charge and the grand jury did indict on a forced violence or intimidation theory. So you've got to tangle with the from the person or presence of another language, which I think is potentially the government's problem. I'll talk to them about this. I'll be more than happy to, Your Honor. Well, no, no. I'm sorry. I guess I'll say just generically. We need to contend with that language. So Campbell definitely didn't. No one took the money from the person of Mrs. Harris. Do you agree with that? Because she just gave him the card. He's using the card. She never handles the money. So he didn't take it from her person. Was your theory that he took it from her presence? In fact, he does. She does handle the money. Apparently the money that was coming out of each of the three ATMs was quite a lot. And he would pass it to her to hold. And then he would assume control of the money. So at some point during this case, the victim did have control of the money. But I also want to talk about ATMs and how far the bank's role in an ATM is. The account holder has a card. The card plus the PIN number is placed in the machine. It gets approved or denied and money is dispensed. By finding this to be a bank robbery, the court would have to find that the bank has to be involved with the motive of the withdrawal. And that's why it stretches the interpretation of the bank robbery statute to its breaking point. And I direct the court to a case that I think I cited in my brief, United States v. Vann. Of all the cases that have decided this issue, Vann is the only one that addressed the legislative history of the bank robbery statute. And the court in Vann wrote that the legislative history emphasizes that the bill, and that's the bill to criminalize bank robbery, was intended to punish those who commit criminal acts directed at a bank, not a bank's customer. This is a crime that's clearly directed at a bank's customer. Once that money is dispensed, the crime is clearly... But I assume, let's say that you're the bank customer and you walk into the bank, you go to the teller, the teller gives you the $20,000 and you walk out of the bank. I would agree with you that if you're robbed outside the bank, that's not a bank robbery because you have possession of the money. But the question here is, what's the difference between the victim here going to a bank teller and having someone next to her say, give me the money that the bank teller just gave you, versus here having the money withdrawn from the ATM and having the person, the victim, say, give me the money that you just withdrew from the ATM? How is that not a bank robbery? Once the money leaves the ATM, it is no longer in the bank's care, custody, and control. It is the customer's care, custody, and control. If she walks five steps or five blocks and that money is stolen from her, how is that bank robbery? But in this case, did not Mr., was it Mr. Campbell, I think? Mr. Campbell, was he not the one withdrawing the money? Yes, he was, and I would direct the court, if I may respond, I know I'm out of time. I would direct the court to the opinion in United States versus Burton. The only difference between Burton and our case is that for some reason, Burton backed in his car to the ATM line at the bank and had the victim withdraw funds that he knew that was there in furtherance of a robbery that he was committing. And the circuit court found that not to be a bank robbery. But in Burton, didn't the victim withdraw the money? Yeah, that's absolutely correct, Your Honor. And that's why Burton backed his car into the ATM line so the victim and not the defendant had access to the ATM machine. Okay, very well. Let's hear from the government. Mr. Horowitz, you've got a minute of rebuttal time remaining. Thank you, Your Honor. May it please the court, Alex Cohen for the United States. With me at council table is Ajay Alexander, who tried the case below. Unless the court has another preference, I'll start with the defendant's bank robbery argument. When the defendant, Campbell, held the victim at gunpoint, took her ATM card, and then withdrew money from her bank account, that was bank robbery. All right, so just so we're clear, you're not contending that this was extortion within the meaning of the statute, right? That's correct. It might have been, but that's not the argument you made. We did not charge bank extortion. We only charged bank robbery, and we think we proved all of the elements of bank robbery. May I ask you a question with respect to the facts? So my understanding is they drove her around the city to three different locations. Well, there were multiple locations, but with respect to the actual withdrawals, there were three different withdrawals from three different locations in three different cities.  And the victim was in a car, and she had a gun pointed at her? Correct. Well, the testimony was that Campbell had a gun in his lap. She was sitting in the passenger seat next to him. They were in that same position at all three banks. He drove and pulled in to drive up ATMs at all three banks, and at all three, he held the ATM card. He took the money out of the bank. So this court does not need to weigh in to the circuit split that the defendants rely on because the circuit split is over if a victim withdraws money from her bank account and then hands the money to the defendant. Could that still constitute bank robbery? And again, these were drive-through banks. That's correct. So they never exited the car. They were still in the car. Or they used the ATM that were located in the bank drive-throughs. That's right, Your Honor. So in saying that we don't need to weigh in to the circuit split and distinguishing Burton, obviously they say Burton in their briefs. You distinguish Burton very vigorously, and you distinguish Burton on the ground. You just said here that, oh, that's totally different because there the victim took the money out. Here the perpetrator took the money out. That, though, seems to me to kind of walk you into a problem about the taking from the person or presence of another. I presume the another here is no one but Mrs. Harris, right? That's right. So factual question that Mr. Horowitz raised, and maybe I missed this, is it true that when Campbell takes the money, he hands it to Harris and then gets it back from her? So the testimony was that after he withdrew the money, he handed it to her with directing her to tie it into bundles for him. So he had a gun in his lap. Her husband was still at the house being held at gunpoint, and he handed it to her instructing her to use zip ties to tie it into bundles and leave it in the cup holder. So when she did that, first we think the bank robbery was already completed, but second, she was acting as his unwilling agent and tying up the money on his behalf. Okay, so if the bank robbery at that point were already completed, how did Campbell take the money from the person or the presence of Mrs. Harris if by the time she ever touched it or whiffed it, the bank robbery was complete? So it's in her presence because when he withdrew the money from her account, she's sitting right next to him in the cup. Did he take it from her presence? I mean, and there's a difference between the way the bank robbery statute is written and the Hobbs Act robbery statute is written. Bank robbery says from the person or presence. Hobbs Act robbery says from the person or in the presence. This seems like an in the presence case, but not necessarily a from the presence case. I don't see a material distinction in the in versus from. I think in this case, he took the ATM card at gunpoint from her person. He then withdrew the money in her presence with her sitting right next to him. An alternative way of looking at it could be that the bank robbery wasn't completed and then he took it when she put it back in the cup holder. At that point, have you lost the other tether of the statute that now he's not really taking money that was within the care, custody, and control of the bank because now it's in her care, custody, and control. Now you're in Judge Lagoa's hypothetical where the person might as well be six blocks down the way. So I think the best way I think of looking at this is we have to look at the status of the money at the time of the taking. The term taking is plainly defined as when Campbell acquired possession or control of the money. In this case, he acquired possession or control of the money when he withdrew it from the ATM card. He never gave up that control, even if he handed it to her and said, tie it into bundles for me in the car. He never gave up control. The money never left that vehicle. She simply tied it in bundles, put it in the cup holder, and then they drove back to the house where he dropped her off and got his co-consumer. But don't the care, custody, or control elements and the from the person or presence of another element have to coincide at the same time? And it seems like your theory kind of breaks them out. One of them saves you care, custody, or control. One of them saves you person or presence, but neither saves them simultaneously. Am I making any sense? Yes, Your Honor, but I think these all happen in the same time frame. So he takes the ATM card from her person. He withdraws the money in her presence. He does so at gunpoint, so it's by intimidation. So all of these elements are happening at the same time. It's immediately afterwards that he hands her the money and she puts it in the cup holder. Well, I mean, I guess to some degree when you, let's assume that you actually walked into the bank and you had a bank teller here. It's obviously an ATM machine, but you're doing it in the presence of Mrs. Harris, right? Yes. You're taking her money out that's being held in the custody and control of the bank. Because once you use the debit card and you put in the PIN numbers, the money that's being held in the custody and control of the bank now is being withdrawn and being taken, and it's being taken by force, really, from Mrs. Harris at that point in time because she's being held at gunpoint. Correct, Your Honor. If there's any further questions on the bank robbery, yes, Your Honor. Do you have any other cases where the of another is not a bank person? I don't, but I would just say that the plain language of the statute is from the person or presence of another. There's no bank employee requirement in the text. I think it would be reading something into the text that's not there to require that this be a bank employee. And so I'm just trying to sort of – you might be right about that. I'm just trying to kind of test the limits of the theory. Could sort of like just a bystander, like a relevant bystander, be the of another? Well, you'd still have to satisfy the intimidation element. So if the only person around was a bystander and there was no act to intimidate them to take the money, I don't think that would be sufficient. But just I'm thinking like think about Judge Lagoa's example of a real-life honest-to-goodness bank robbery the kind you see in the movies, and there's this really intimidated customer over cowering in the corner. Does that count? I suppose it could count if the defendant took the money from an ATM in the presence of a bystander. The bystander observes it all. But we also have to have the mens rea element that the defendant has to knowingly take the money by intimidation. So in your hypothetical, I don't know if we would be able to satisfy that if the defendant wasn't even aware that there was this bystander in the back. And just one more sort of like block down the road. What about like a reluctant accomplice, somebody who like really didn't want to go along with this plan but standing next to the main perpetrator and sort of quaking in his boots? Is he of another? Does his presence radiate far enough to be the of another in the statute? That could be the of another, but I also would question whether that satisfies the intimidation prong because you have to be taking the money by intimidation. In this case, the person he's taking, he's taking the money from the bank and he's doing so by intimidation of Mrs. Harris because he's exploiting her access to the bank account by using her ATM card. In the case where there's an accomplice who's intimidated, I'm not sure if that would be tied to the taking of the money because it's the taking of the money that has to be by intimidation. Okay. If there's no further questions on the bank robbery issue, I'll address James' suppression argument. With respect to suppression, this court can affirm on any of three alternative grounds. First, the warrant established probable cause and was sufficiently particular. Second, the agent relied on it in good faith. And third, any error is harmless. With respect to probable cause, the two brief references to the Hamilton case and a technical portion of the affidavit doesn't eviscerate the probable cause established in the remaining 47 paragraphs of the affidavit. There are ample facts in the affidavit establishing probable cause to search James' cell phone, including, as Judge Lacoa's question suggested, that the victim observed all three defendants using their cell phones during the offense. That's in paragraph 17. There's also in the affidavit that the cash-out transaction was associated with James' phone. That's paragraph 26. And then there was also that Campbell was seen repeatedly on his phone while dragging Mrs. Harris around town. In the affidavit, the officer averred that, in his experience, people executing a kidnapping often maintain communications with each other. So there is reason to believe that Campbell would have been contacting James. If the court has any questions on this or any of the other issues in the brief, I'm happy to address them. If there are none, the government asks that the court affirm the convictions and sentences. On the search warrant point, it seems that there's no dispute that there's evidence tying the cell phones to the crime. It seems like the focus is on the iCloud account, and that appears to be where your opposing counsel is focusing, that when it comes to linking the evidence specifically to the iCloud account, that's where this mistake was made. What's your response to that? My first response is that in McCall, this court explained that probable cause to search an iPhone establishes probable cause to search an iCloud account because, as this affidavit explained, iCloud stores and backs up information from an iPhone. So even though there were these two brief references to another case, there were still many paragraphs in the section regarding Apple and iCloud that explain that iCloud stores and backs up communications, images, videos, et cetera, from the iPhone. So by establishing probable cause to search the iPhone, and the affidavit also noted there was an iCloud backup about a month after the offense, the warrant established probable cause to search the iCloud account as well. If the court has any other questions, I'm happy to address them. If there are none, the government asks that the court affirm the convictions and sentences. Thank you. Thank you so much. All right, Mr. Schwartz, one minute. Picking up on Judge Kidd's comment, the iCloud connection to the phone here is the issue. Was there any use by the phone that was in the search warrant that links to the iCloud? The answer is no. Using the phone by its . . . Your opposing counsel cites McCall. How do you distinguish McCall? McCall relied on the good faith element of the search warrant. The court did not reach the merits of whether or not there was a Fourth Amendment violation, as I recall, McCall. It turned on whether there was good faith by the officer in relying on the search warrant. And here, there is no good faith where the magistrate . . . You have a search warrant clearly was not read by the magistrate. And it's not harmless error because there is not overwhelming evidence when you take a . . . It's fair, necessarily, to say that the magistrate judge didn't read the search warrant. Hamilton is referenced only twice, right? I looked at the search warrant. It's twice. It's in one paragraph in the technical section. When the magistrate judge is reading the search warrant, mostly focused on the probable cause, right? But sure, there are two. The only references to Hamilton is in that paragraph. The rest of the warrant is about the actual defendant. So I don't know that we can really read . . . We can really say that the magistrate judge didn't read the search warrant just because the magistrate judge didn't reach out to the U.S. Attorney's Office and tell them that they should strike two references to Hamilton. Understood, Your Honor. I just think that that portion of the search warrant was crucial to linking the iCloud . . . what's in the iCloud to the use of the phone that would lead to evidence in the iCloud. And I understand that it's only the two references, Your Honor. But the rest of that section is key to the search warrant because it talks about what can we find in the iCloud that would be evidence of this crime. And when you're talking about what's . . . it's sort of like what's in a house that might be evidence of the crime. Well, something was placed there or something was seen placed there or something was transported or we have probable cause that something is . . . evidence of a crime is located in a particular area to be searched. But here, nothing in the search warrant says, as far as Mr. James' use of the phone, that would cause the evidence . . . cause evidence to be stored in the iCloud. Just using the phone by itself does not mean that you're going to have evidence in the iCloud. The evidence in that whole section is not simply . . . it's technical information. But they go on and on about what information is in the iCloud and they do not link the use of the phone to what's in that section. Except in those two paragraphs where they try to pick out facts from an offense. But it's a different offense. It shows that the agent didn't read through it, nor did the magistrate who would have caught it if that was read. So, Your Honor, I would . . . Your Honor, thank you for your time. I would ask that you reverse the denial of the search warrant and remand to the court. Thank you. Very well. Thank you so much. And Mr. Horowitz, one minute. Thank you very much, Your Honor. I know we've talked a lot about Mr. Campbell giving the money to the victim. I want to make sure that the court has the record citations for that. And that would be on the second day of trial. It's docket entry number 386 at pages 143 and 146. That's where the evidence is of as the money was withdrawn from the ATM, Campbell passed it to the female victim. So I want the court to have that. And it's our position that the withdrawal process is complete. Because the bank's obligation is to get a valid card and a valid PIN number. They don't check the motive of the person making the withdrawal. They get a valid card, valid PIN number. Money is dispensed. The bank's role is over. The motivation behind the withdrawal is not the bank's issues. With the proliferation of ATMs around the country, it may become a bigger problem than the bank robbery statute envisioned. Thank you, Your Honor. Very well. Thank you. And Mr. Schwartz, Ms. Lowenthal, Mr. Horowitz, we know that you were court appointed. We certainly appreciate your service to your clients and the court. Thank you. Thank you, Your Honor. All right. Very well. That case is submitted. Let's move to case number two, which is Doe v. Carnival Corporation, 24-13159. Thank you very much.